THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION, PLAINTIFF v. STEVEN F. LONG, AND WIFE, LORRAINE R. LONG; TRSTE, INC., TRUSTEE; WACHOVIA BANK, N.A., BENEFICIARY; SPRUILLCO, LTD, TRUSTEE; CAPITAL FACTORS, INC., BENEFICIARY; AND ANY OTHER PARTIES IN INTEREST DEFENDANTS

No. COA05-283

(Filed 7 February 2006)

1. Eminent Domain— takings—sewer line easement—replacement system—not a separate taking

There was not a separate taking in a sewer project where plaintiff installed a new leach field, pipe and pump to replace a septic system rendered inoperable by a new permanent sewer easement (the original taking). The installation of the new septic system did not necessarily flow from construction of the improvement, but was an effort to accommodate defendants' need for a new system, to which defendants consented.

2. Eminent Domain— takings—sewer line easement—replacement system—not an additional taking—instruction on damages

There was no additional taking in a sewer project where plaintiffs built a new septic system to replace a system rendered inoperable by the new sewer line easement, and no error in the court's instruction that the jury could (rather than must) consider the condition of the old and new systems.

**3. Easements— sewer line—replacement system—costs born by owners**

The owners must bear any costs in maintaining and operating a new pump-based septic system installed to replace a gravity system rendered inoperable by a sewer line easement. Plaintiff installed the new system for the owners' personal benefit, retained no ownership in the new system, and the owners were the only ones directly benefitting.

Appeal by defendants from order entered 12 November 2004 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 October 2005.

*Office of the City Attorney, by Assistant City Attorney Catherine C. Williamson, for plaintiff-appellee.*

*The Odom Firm, PLLC, by T. LaFontine Odom, for defendants-appellants.*

CALABRIA, Judge.

Steven and Lorraine Long ("Long"), along with TRSTE, Inc., trustee, and Wachovia Bank, N.A., (known collectively as "defendants"), appeal the 12 November 2004 order concluding the City of Charlotte's ("plaintiff") installation of a new septic system including pump tank ("pump"), 400 feet of a 2-inch pipe ("pipe"), and new leach field ("field") was not an additional taking of defendants' property for which defendants are entitled to compensation. We affirm.

On 12 August 2003, pursuant to N.C. Gen. Stat. § 136-103, plaintiff instituted an eminent domain action by filing a complaint, declaration of taking, and notice of deposit of $6,200.00 as either full compensation or as a credit against just compensation. The plaintiff acquired a permanent sanitary sewer easement and temporary construction easement across defendants' property to install both an 8-inch gravity sewer line and a 16-inch pressurized sewer force main for a development of homes.

The permanent easement ran through defendants' existing leach field rendering their gravity septic waste disposal system ("disposal system") inoperable. Due to this consequence, plaintiff hired a licensed soil scientist to determine suitable locations for the installation of a replacement field for defendants' disposal system. The defendants requested installation of a new field in a wooded area 400

feet from the back of their home. Because the new field, measuring approximately one and one-half times larger than the original, was at a higher elevation than the defendants' home, plaintiff had to install a pump out of defendants' front yard to remove waste from the home to the new field. In an area between the newly installed pump and field, the plaintiff installed the pipe. The pump, operated by electricity, was connected to the defendants' electric panel. Plaintiff contracted with a third party to perform this work and paid all costs associated with the installation of the "new" septic waste disposal system.

On 20 July 2004, defendant filed an answer, responded to the declaration of taking and notice of deposit, and counterclaimed for inverse condemnation. Specifically, defendant alleged that in addition to the permanent sewer easement and temporary construction easement, plaintiff appropriated portions of defendants' property outside the easements for the pump, pipe and field. On 28 July 2004, plaintiff replied to the counterclaim and denied appropriating any further property of defendants.

On 23 September 2004, defendants filed a motion pursuant to N.C. Gen. Stat. § 136-108 to ascertain whether plaintiff had taken property outside the easements. On 12 November 2004, the trial court determined plaintiff's installation of the pump, pipe, and field outside the permanent and temporary easements failed to constitute an additional taking of defendants' property for which they were entitled compensation. In addition, in ascertaining just compensation due defendants for the sewer and construction easements, the trial court concluded the jury may consider the effect of this taking on defendants' use of their property, specifically the condition of their inoperable system and its replacement. Defendants appeal.

[1] Defendants first argue the trial court erred in concluding the plaintiff's installation of the pump, pipe, and field did not constitute an additional taking. Defendants contend such an appropriation of land constituted inverse condemnation since the damage to the land outside the easements was ineluctably tied to the construction of both the sewer force main and sewer line. We disagree.

Inverse condemnation, "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency," *Charlotte v. Spratt*, 263 N.C. 656, 662-63, 140 S.E.2d 341, 346

(1965) (internal citation and quotation marks omitted), requires the following: "(1) a taking (2) of private property (3) for a public use or purpose." *Adams Outdoor Advertising of Charlotte v. N.C. Dep't of Transp.*, 112 N.C. App. 120, 122, 434 S.E.2d 666, 667 (1993). A taking, or "entering upon private property . . . devoting it to a public use, or . . . informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof," *Ledford v. N.C. State Highway Comm'n*, 279 N.C. 188, 190-91, 181 S.E.2d 466, 468 (1971), "requires 'substantial interference with elemental rights growing out of the ownership of the property.' " *Adams*, 112 N.C. App. at 122, 434 S.E.2d at 667 (quoting *Long v. City of Charlotte*, 306 N.C. 187, 198-99, 293 S.E.2d 101, 109 (1982)). Importantly, in order to illustrate a taking "[a] plaintiff must show an actual interference with or disturbance of property rights resulting in injuries which are *not merely consequential or incidental. Id.* (emphasis added).

"[A] municipality is solely liable for the damages that *inevitably or necessarily flow* from the construction of an improvement. . . ." *City of Winston-Salem v. Ferrell*, 79 N.C. App. 103, 110, 338 S.E.2d 794, 799 (1986) (emphasis added). Thus, "[d]amages to land outside the easements which inevitably or necessarily flow from the construction of the [improvement] result in an appropriation of land for public use [to which] [s]uch damages are embraced within just compensation to which defendant landowners are entitled." *Id.*

*Ferrell* is instructive in determining what is and what is not considered 'inevitably and necessarily' tied to the construction of an improvement and thus compensable as a taking under inverse condemnation. In *Ferrell*, a contractor entered defendant's property and built a temporary roadway outside the already acquired easements so as to haul in supplies for the project. *Id.* at 105, 338 S.E.2d at 796. The same contractor, also outside of the prescribed easements, used another portion of defendant's property as a "staging area" to store pipes and equipment. *Id.* This Court determined that because "the contractor's use of the roadway over defendant's property was *essential to provide access* to the City's sewer outfall construction site, . . . *such use thus necessarily flowed* from the construction of the improvement. . . ." *Id.* at 112, 338 S.E.2d at 800 (emphasis added). Conversely, "[u]nlike the evidence regarding the contractor's use of the roadway, the evidence regarding its use of the staging area does *not show* that *such use was necessary to complete the project.*" *Id.* at 113, 338 S.E.2d at 800 (emphasis added). This

Court holds plaintiff's conduct clearly fails to amount to an additional taking and plaintiff's action in the instant case was more like the staging area in *Ferrell*, and less like the roadway.

Plaintiff's installation of the pump, pipe, and field on defendants' property did not *necessarily flow* from construction of the improvement, here the 8-inch sewer line and 16-inch sewer main force. The installation was not part of the improvement project, but rather the plaintiff's subsequent and separate effort to accommodate defendants' need for a new septic system. In fact, defendants consented to the installation of the new pump, pipe, and field and plaintiff reciprocated by expending $16,000.00 to cover the cost. Defendants incorrectly assert a separate taking has occurred. This assignment of error is overruled.

**[2]** Defendants next argue the trial court erred in holding the jury *may* consider the effect of the "additional taking" on defendants' use of their residence. Specifically, defendants contend the jury *must* consider the condition of their inoperable gravity septic system and the replacement system installed by plaintiff since plaintiff's actions constituted inverse condemnation. We disagree.

N.C. Gen. Stat. § 136-112(1) (2005) provides as the proper measure of damages for inverse condemnation "[w]here only a part of a tract is taken, the measure of damages for said taking *shall* be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the *remainder* immediately after said taking. . . ." (Emphasis added). Furthermore, " '[t]he fair market value of the remainder immediately after the taking contemplates the project in its completed state and any damage to the remainder due to the user [sic] to which the part appropriated may, or probably will, be put.' " *Dep't. of Transp. v. Bragg*, 308 N.C. 367, 370, 302 S.E.2d 227, 229 (1983) (quoting *Bd. of Transp. v. Brown*, 34 N.C. App. 266, 268, 237 S.E.2d 854, 855 (1977)).

In the instant case, a judge or jury determines the amount of just compensation due defendants by calculating the difference between the fair market value of defendants' entire tract prior to the taking of both the permanent sanitary sewer easement and the temporary construction easement, and the fair market value of the remainder of defendants' property immediately after both the taking of these easements and the completion of the project itself. This calculation must include any potential damage caused to the remainder of defendants' property due to the use of the easements. The court determined the

amount of just compensation due defendants by measuring the damages for the taking of the sewer and construction easements, not the installation of the new septic system comprised of the pump, pipe, and field. In addition, we note defendants argue that an additional taking occurred and the effect of that additional taking upon the fair market value of their property *must* then be calculated. This premise was expressly refuted above as no additional taking occurred. This assignment of error is overruled.

**[3]** Defendants' remaining assignment of error is that the trial court erred in finding that defendants alone would have to bear the electrical as well as any maintenance and repair costs to operate the newly installed pump. We disagree. Here, plaintiff expended $16,000.00 to install a new pump, pipe, and field solely for the Longs' personal benefit. The plaintiff retained no ownership rights in this newly installed septic system. The only individuals directly benefitting from this new septic system are the Longs. Thus, any future electrical, maintenance or repair costs must be borne by the actual owners of this new septic system, the Longs. This assignment of error is overruled.

Affirmed.

Judges HUDSON and BRYANT concur.